[Civ. No. 5967. Second Appellate District, Division One.—April 25, 1928.]

COMMERCIAL CASUALTY INSURANCE COMPANY (a Corporation), Petitioner, v. INDUSTRIAL ACCIDENT COMMISSION, ANTONIO SOLIS, a Minor, etc., et al., Respondents.

Harry D. Parker for Petitioner.

G. C. Faulkner for Respondents.

SHAW, J., *pro tem.*—This proceeding brings before us on a writ of review a decision of the Industrial Accident Commission. The case was brought before that Commission by Antonio Solis, who filed an application stating that he was in the employ of American Cleaners & Dyers; that he had sustained injuries arising out of his employment, and that the petitioner was the insurance carrier of his employer. Petitioner filed an answer admitting that it had issued a policy to one Joe Uribe, but denying that he was the applicant's employer, and denying generally that it was the insurance carrier of such employer, and alleging that the policy issued by it did not cover the place where the injuries to the applicant occurred. After a hearing, the Industrial Accident Commission found against petitioner on both of these defenses and made an award against it in favor of the applicant, dismissing the employer from the case. The petitioner now claims that the findings above mentioned are without support in the evidence.

On the first point it was conceded that on November 4, 1926, petitioner had issued to Joe Uribe, doing business as American Cleaners & Dyers, a policy insuring him under the Workmen's Compensation Law. (Stats. 1913, p. 279.) The applicant was injured on April 21, 1927, and petitioner's contention is that after the issuance of the policy and before the applicant was injured, Joe Uribe had taken a partner named Beldon; that at the date of the injuries the business formerly carried on by Uribe alone was being carried on by Uribe and Beldon as partners, but under the same fictitious name as before; that no assignment of the policy or consent of petitioner to such change was shown; and that the necessary conclusion from these facts is that at the time of the applicant's injuries petitioner was not the insurance carrier for the employer.

The evidence on this point was given by Uribe alone. He testified in substance that Beldon was with him from the first of the year following the issuance of the policy, but working on commission; that in February Beldon was a partner, and that the place where the applicant was injured was operated by himself and Beldon in partnership. He further testified as follows: "Q. You went into partnership with him on January 1st? A. Well in February we talked

about partnership but we never sign no agreement. He was there and left in April. We didn't really sign nothing because we couldn't come to any agreement, so he just left. Q. So you never did come to an agreement on partnership? A. No sir. Q. But you talked about partnership? A. Yes. Q. And then in April he left, did he? A. Yes, trouble came up, there was too much trouble. Q. By trouble you mean when this man got hurt? A. Sure. Q. And the place got burned down? A. Yes sir. . . . Q. And in talking with Mr. Beldon about going into partnership with you, was the talk that he would go into partnership in the cleaning business, in just the part of the business of cleaning, or was he to go into partners with you? A. In the two businesses. Q. Both businesses together? A. Yes sir. Q. But that was never finished up? A. That wasn't finished.'' He also testified that the funds of the business were kept at all times in a bank in his own name; that he had a lot of machinery in one of the places of business, and that Beldon was not drawing any salary from February, but got one-half of the profits of the business from that time until the place was burned up (which happened at the same time that applicant was injured).

From this evidence we think conflicting inferences may be drawn. The division of the profits between Uribe and Beldon is one of the *indicia* of a partnership, but on the other hand it appears that the plant used in the business was owned by Uribe and apparently Beldon had contributed nothing to it and that when disaster came Beldon simply stepped out without the necessity of any settlement of partnership accounts between them. Negativing the existence of a partnership is also Uribe's testimony that they talked about a partnership, but never came to an agreement about it. It is true that he also testified in so many words that they were partners, but this general statement was not conclusive against his testimony of circumstances from which a contrary inference could be drawn. ▮ In reviewing the decisions of the Industrial Accident Commission, we have no power to weigh conflicting evidence for the purpose of determining on which side the preponderance lies. If, on any reasonable view that can be taken of the evidence, we find its decision supported by substantial evidence, even though there may be evidence in conflict there-

with, our inquiry is at an end. In this case we discover such support for the finding under consideration.

 Petitioner's other point is based on the fact that the place of business at which the applicant was injured was not that specified in the policy, although the policy declared as one of the conditions that the employer was conducting business operations at no other place than that so specified. But the policy also contained a provision that it should apply to injuries sustained by reason of the business operations described, whether conducted at the work places described "or elsewhere in connection with it, or in relation to, such work places," and in its description of the business operations covered by it, which immediately follows the specification of the place of business, it includes "operations not on the premises." This question is decided against the petitioner in *Associated Theatres* v. *Industrial Acc. Com.*, 57 Cal. App. 105 [206 Pac. 665], where it was held that a policy identical in terms with that now under consideration covered business operations at other places than that specified in the policy.

The award is affirmed, and the writ is discharged.

Conrey, P. J., and York, J., concurred.